1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

11  JORGE MARTINEZ,

12                                    Plaintiff,

13  v.

14  FORD MOTOR COMPANY, NORM
    REEVES FORD LINCOLN, ETHOS
15  GROUP INC. and DOES 1 through 10,
    inclusive,
16

17                                    Defendant.

18

19

Case No. 22-cv-1082-MMA (BGS)

**ORDER GRANTING DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS AND**

[Doc. Nos. 5]

**GRANTING DEFENDANT ETHOS GROUP INC.'S MOTION TO DISMISS**

[Doc. No. 6]

20

21        On June 24, 2022, Jorge Martinez ("Plaintiff") commenced the instant action

22  against Ethos Group Inc. ("Defendant Ethos"), Ford Motor Company ("Defendant

23  Ford"), Norm Reeves Ford Lincoln, and Does 1–10 in the San Diego County Superior

24  Court. *See* Doc. No. 1-2 ("Compl."). On July 25, 2022, Defendant Ford removed the

25  action to this Court based on federal question jurisdiction. *See* Doc. No. 1. Defendant

26  Ethos consented to removal. *See* Doc. No. 1 at 2. Both Defendant Ethos and Defendant

27  Ford now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See*

28  Doc. Nos. 5, 6. Plaintiff filed oppositions, to which Defendants Ford and Ethos replied.

*See* Doc. Nos. 9, 10, 12, 13.  The Court found the matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  *See* Doc. No. 14.  For the reasons set forth below, the Court **GRANTS** Defendant Ethos's motion to dismiss and **GRANTS** Defendant Ford's motion to dismiss.

## I. BACKGROUND[1]

Plaintiff purchased a "new 2014 Ford Edge" (the "Vehicle").  Compl. ¶ 6.  Elsewhere Plaintiff states that the Vehicle was "Certified Pre-Owned."  *Id.* ¶ 7.  Plaintiff contends that Defendant Ford is the manufacturer "and or" distributor of the Vehicle.  *Id.* ¶ 6.  Plaintiff also purchased a service contract from Defendant Ethos "that covered some repair costs of the Vehicle."  *Id.* ¶ 64.

The Vehicle subsequently developed issues.  *See id.* ¶ 9.  Plaintiff alleges the following mechanical failures:

> During the warranty period, the Vehicle contained or developed nonconformity(s) to warranty, including but not limited to defect(s) which have manifested as check engine lights, cooling fan defect, power steering defect, coolant leaks, oil leaks, and Evaporative Emission Control System leaks. Said defects substantially impair the use, value, or safety of the Vehicle.

*Id.* ¶ 9.

Plaintiff maintains that Defendant Ethos failed to provide the "services" and parts necessary for normal operation.  *Id.* ¶ 66.  In sum, Plaintiff asserts Defendant Ethos "fail[ed] to comply with their obligations" under the service contract.  *Id.* ¶ 67.  As to Defendant Ford, Plaintiff asserts that it failed to repair or replace the vehicle as required by the warranties, and failed to reimburse him for expenses.  *See id.* ¶¶ 6–44.

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the Complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "However, [courts] are not required to accept as true conclusory

allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (citing *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996)).

Additionally, allegations of fraud or mistake require the pleading party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The context surrounding the fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "'Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.' A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'" *Kearns*, 567 F.3d at 1124 (citation omitted) (first quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); and then quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. DISCUSSION

Defendants move to dismiss all causes of action against them on the ground that Plaintiff fails to state a claim under Rule 12(b)(6). *See* Doc. Nos. 5-1, 6. The Court addresses each of Defendants' motions in turn.

### A. Defendant Ethos's Motion to Dismiss

Plaintiff brings two causes of action against Defendant Ethos: (Claim 9) breach of a service contract in violation of Cal. Civ. Code § 1794.4 ("Song-Beverly Act"); (Claim 5) unlawful business practice in violation of Cal. Bus. & Prof. Code § 17200 *et seq.* ("Unfair Competition Law" or "UCL").

As Defendant Ethos correctly notes, "without Count Nine, [Plaintiff] cannot maintain his Fifth Cause of Action." Doc. No. 6. At 9. This is because "the [unlawful prong of the] UCL 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'" *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2022) (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999) (citations omitted)). As will be discussed below, Plaintiff only pleads an unlawful UCL violation. Accordingly, the Court begins its discussion with Plaintiff's Song-Beverly Act claim before turning to his UCL claim.

> 1.  *Ninth Cause of Action: Violation of Song-Beverly Act § 1794.4(b)*

"[A] Song-Beverly Act claim arises by virtue of the contractual relationship between a plaintiff (buyer) and a defendant (seller)." *Boyd v. Jaguar Land Rover N. Am., LLC*, No. 11CV1580 JLS (WMC), 2012 WL 12868253, at *3 (S.D. Cal. Sept. 20, 2012). Plaintiff specifically cites the "service contract" provisions of the Song-Beverly Act, §§ 1794.4 and 1794.4(b). Compl. ¶ 67. The relevant language states that "[e]xcept as otherwise expressly provided in the service contract, every service contract shall obligate the service contractor to provide to the buyer of the product all of the services and functional parts that may be necessary to maintain proper operation and service" of the Vehicle. Cal. Civ. Code § 1794.4(b).

Here, the nature of the "contractual relationship" between Plaintiff and Defendant Ethos is for service. *Boyd*, 2012 WL 12868253, at *3. Plaintiff pleads the service contract covered at least some costs of repair. *See* Compl. ¶ 64. But Plaintiff does not plead how Defendant Ethos allegedly violated this service contract. *See id.* ¶¶ 66–67. Plaintiff has not alleged any facts—such as dates of service, failures of repayment, or functional parts withheld—to afford Defendant Ethos fair notice of its alleged violation. *See id.* ¶¶ 63–67; Doc. No. 10 at 9-10. Moreover, if the service contract contains unique terms that fall within the qualifying language of the Song-Beverly Act, Plaintiff has made no such showing of how Defendant Ethos breached these provisions. *See* § 1794.4(b)

("Except as otherwise expressly provided in the service contract . . . ."). Instead, the ninth cause of action contains nothing more than a "formulaic recitation" of the Song-Beverly 1794.4(b) provision quoted above. *Iqbal*, 556 U.S. at 678; *see* Compl. ¶ 66. A mere copy-and-paste of the statute is insufficient to state a claim under Rule 12(b)(6). *See* Compl. ¶ 66 ("Defendant failed to provide Plaintiff with all of the services and functional parts that may be necessary to maintain proper operation of the entire product under normal operation and service . . . .").

Plaintiff elsewhere pleads a violation of the service contract by incorporating the mechanical failures from his first cause of action. *See* Doc. No. 10 at 9. However, "a service contract is not an express warranty . . . ." *Gavaldon v. DaimlerChrysler Corp.*, 90 P.3d 752, 756 (Cal. 2004). The Song-Beverly Act "does not permit a service contract to cover the same items as an express warranty. Section 1794.4 specifies that service contracts are sold in addition to or in lieu of express warranties. And section 1794 refers to express warranties and service contracts in the alternative." *Id.* at 757. In drafting the Song-Beverly Act, the California legislature "thought of the purchase of a service contract as distinct from the purchase of the product, and not as a representation of fitness but only an agreement to provide repair services, a kind of insurance." *Id.* at 758. Accordingly, Plaintiff has not stated a Song-Beverly Act claim based upon the mechanical failures that underly his express warranty claims.

For these reasons, the Court finds that Plaintiff fails to plead a violation of the Song-Beverly Act. Consequently, the Court **GRANTS** Defendant Ethos's motion to dismiss the ninth cause of action.

### 2.  Fifth Cause of Action: Violation of B&P Code § 17200

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. "Because the statute is written in the disjunctive, it applies separately to business acts or practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Wilson v. Gateway, Inc.*, No. CV 09-7560-GW(VBKX), 2011 WL 13187108, at *9 (C.D. Cal. Apr. 21, 2011). It is unclear which of the three

prongs are at issue here. *See* Compl. ¶¶ 31–33. Plaintiff vaguely asserts Defendant Ethos "committed several statutory violations." Compl. ¶ 32. However, the Court declines to invent or imagine what these violations might be. Plaintiff attempts to revise the Complaint by arguing in opposition that Defendant Ethos violated all three prongs of the UCL. *See* Doc. No. 10 at 8–9. However, Plaintiff's claim as pleaded is limited to the 'unlawful' prong. *See Dong v. BMW of N. Am., LLC*, No. 19-CV-2202 DMS (BGS), 2021 WL 824771, at *6 (S.D. Cal. Mar. 4, 2021); *see* Compl. ¶ 33 ("These violations of law serve as a basis for a *per se* unlawful business practice under B & P § 17200). Nonetheless, for the sake of completeness, the Court addresses each prong in turn.

As an initial matter, "Rule 9(b)'s particularity requirement applies to these state-law causes of action. In fact, [the Ninth Circuit] [has] specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL." *Kearns*, 567 F.3d at 1125 (citing *Vess*, 317 F.3d at 1102–1105). Here, "[t]he Federal Rules of Civil Procedure apply irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal." *Vess*, 317 F.3d at 1102.

First, Plaintiff does not sufficiently plead the fraudulent prong because he fails to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "In the context of Rule 9(b), a plaintiff must include a description of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *In re Facebook PPC Advert. Litig.*, No. 5:09-CV-03043-JF, 2010 WL 3341062, at *9 (N.D. Cal. Aug. 25, 2010) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.2007)) (discussing claims under the UCL's fraudulent prong). Here, Plaintiff does not allege the time, place, or specific content that caused him harm. *See* Compl. ¶¶ 31–33; Doc. No. 10 at 8. Therefore, Plaintiff fails to adequately plead the fraudulent prong.

Second, although "Plaintiff may state a violation under the unfair category" of the UCL, a perfunctory listing of the elements is insufficient "to state a claim to relief that is

plausible on its face." Doc. No. 10 at 8; *Twombly*, 550 U.S. at 570. "An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefit to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1137 (N.D. Cal. 2010) (quoting *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 129 (Cal. Ct. App. 2006)). "To sufficiently plead a claim under the UCL's 'unfair' prong, plaintiffs must allege facts supporting all three elements." *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010). Here, Plaintiff neglects to include any facts that might support the unfair prong's elements. *See* Compl. ¶¶ 31–33; Doc. No. 10 at 8–9. Accordingly, Plaintiff fails to adequately plead the unfair prong.

Finally, Plaintiff fails to plead the unlawful prong of the UCL because—as discussed in the preceding section—he fails to adequately plead a violation of the Song-Beverly Act. "A UCL claim 'stands or falls depending on the fate of antecedent substantive causes of action.'" *Portelli v. WWS Acquisition, LLC*, No. 17-CV-2367 DMS (BLM), 2018 WL 9539773, at *4 (S.D. Cal. July 6, 2018) (quoting *Krantz v. BT Visual Images*, 107 Cal. Rptr. 2d 209, 219 (Cal. Ct. App. 2001)). Here, Plaintiff's unlawful UCL claim against Defendant Ethos depends on a violation of the Song-Beverly Act. *See* Compl. ¶ 32. Because Plaintiff's Song-Beverly Act claim fails, his fifth cause of action against Defendant Ethos also fails.

Accordingly, because Plaintiff fails to adequately plead his UCL cause of action under all three prongs, the Court **GRANTS** Defendant Ethos's motion to dismiss the fifth cause of action.

## B.   Defendant Ford's Motion to Dismiss

Plaintiff brings six causes of action against Defendant Ford: (Claim 1) breach of express warranty in violation of California Civil Code § 1793.2(d); (Claim 2) failure to repair in violation of California Civil Code § 1793.2(b); (Claim 3) breach of express warranty in violation of California Civil Code § 1794 and the Uniform Commercial Code

("UCC"); (Claim 4) breach of the implied warranty of merchantability in violation of California Civil Code § 1791.1; (Claim 5) violation of UCL § 17200 *et seq*; and (Claim 6) violation of the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.  The Court addresses each in turn.

> 1.   *First Cause of Action: Violation of Cal. Civ. Code § 1793.2(d)*[2]
>
> To prevail on a section 1793.2(d) breach of warranty claim, the plaintiff
>
> has the burden to prove that (1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair (the presentation element); and (3) the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts (the failure to repair element).

*Oregal v. American Isuzu Motors, Inc.*, 109 Cal. Rptr. 2d 583, 588 (Cal. Ct. App. 2001).

Plaintiff argues that Defendant Ford provided an express written warranty, that the Vehicle developed mechanical defects within the warranty period, and that "[s]aid defects substantially impair the use, value, or safety of the Vehicle."  Compl. ¶¶ 7, 9.  The defects Plaintiff specifies could support a plausible inference that the nonconformity element is met.  *See id.* ¶ 9.

However, Plaintiff does not sufficiently plead the "presentation" and "failure to repair elements."  *Oregal*, 109 Cal. Rptr. 2d at 588.  Plaintiff's allegations are conclusory and unsupported factually.  *See* Compl. ¶ 10 ("Defendant and its representatives in this state have been unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities").  For example, Plaintiff does not plead when he presented the Vehicle, or how many times it was brought for

---

[2] Though Plaintiff also cites § 1793.1(a)(2), the Court declines to infer a cause of action in the absence of such a pleading.  Compl. ¶¶ 10–11; *see* Cal. Civ. Code § 1793.1(a)(2) (describing the font and language requirements for work orders and repair invoices).

repair.  As a result, Defendant Ford cannot adequately defend itself from such "naked assertions." *Twombly*, 550 U.S. at 555.  Therefore, the Court **GRANTS** Defendant Ford's motion to dismiss the first cause of action.

### 2.   Second Cause of Action: Violation of Cal. Civ. Code § 1793.2(b)

Plaintiff's second cause of action arises from nonconforming goods that were not "serviced or repaired to conform to the applicable warranties within 30 days."  Cal. Civ. Code § 1793.2(b).  Plaintiff alleges that he "presented the Vehicle to Defendant's representative in this state, Defendant and its representative failed to commence the service or repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the applicable warranties within 30 days."  Compl. ¶ 17; *see Potts v. Ford Motor Co.*, No. 321CV00256BENBGS, 2021 WL 2014796, at *6 (S.D. Cal. May 20, 2021).

But as this Court ruled in *Potts*, "this allegation is simply another recital of the elements of the cause of action."  2021 WL 2014796 at *6 (citing *Iqbal*, 556 U.S. at 678).  Defendant Ford does not know "where, when, or how [Plaintiff] presented the Vehicle for service."  *Id.*  Further, as with the first cause of action, Defendant Ford does not know who Plaintiff presented the vehicle to for service.  For these same reasons, the Court finds that Plaintiff has not sufficiently pleaded his failure to repair claim.  Therefore, the Court **GRANTS** Defendant Ford's motion to dismiss the second cause of action.

### 3.   Third Cause of Action: Express Warranty — Violation of UCC

According to the Complaint, Plaintiff brings his third cause of action pursuant to California Civil Code § 1794 and UCC § 2725.  *See* Compl. ¶ 8.  However, Plaintiff concedes in opposition that he pleaded the incorrect commercial code section.  *See* Doc. No. 9 at 12.  According to Plaintiff, his third cause of action is for violation of UCC § 2313.  *See id.*  The Court agrees with Plaintiff that this typographical error, while requiring correction, is not a proper basis for substantive dismissal.

This cause of action—brought pursuant to the California Civil Code and UCC— arises from an alleged breach of an express warranty.  *See* Cal. Com. Code. § 2313.

"Under California law, to establish breach of express warranty, 'the plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.'" *Zuehlsdorf v. FCA US LLC*, No. EDCV181877JGBKKX, 2019 WL 2098352, at *11 (C.D. Cal. Apr. 30, 2019) (quoting *Weinstat v. Dentsply Int'l, Inc.*, 103 Cal. Rptr. 3d 614, 626 (Cal. Ct. App. 2010)).

While Plaintiff need not prove these elements at the pleading stage under Fed. R. Civ. P. 8, he must still provide some factual support to survive a 12(b)(6) motion to dismiss. That support is not present here. Plaintiff only asserts that "the representative failed to repair the Vehicle, breaching the terms of the written warranty on each occasion" that it was presented. Compl. ¶ 23. Considering the conjunctive elements, this pleading is insufficient. Accordingly, the Court **GRANTS** Defendant Ford's motion to dismiss the third cause of action.

    4.    *Fourth Cause of Action: Implied Warranty of Merchantability — Violation of Cal. Civ. Code § 1791.1(a)*

Plaintiff's fourth cause of action is for violation of California Civil Code § 1791.1(a). Compl. ¶¶ 28–29. At the most basic level, "[a]n implied warranty of merchantability . . . requires that consumer goods '[a]re fit for the ordinary purposes for which such goods are used.'" *Victorino v. FCA US LLC*, 326 F.R.D. 282, 290 (S.D. Cal. 2018) (quoting Cal. Civ. Code § 1791.1(a)). The duration of the implied warranty may vary depending on whether the vehicle is new or used. *See* Cal. Civ. Code § 1791.1(c) (setting a minimum of sixty days and a maximum of one year for new vehicles); Cal Civ. Code § 1795.5(c) (setting a minimum of thirty days and a maximum of three months for used vehicles). "[P]ursuant to California Commercial Code § 2725, 'implied warranty claims must be brought within four years of the date when the breach occurred.'" *Tanner v. Ford Motor Co.*, 424 F. Supp. 3d 666, 671 (N.D. Cal. 2019) (quoting *Gerstle v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2017 WL 2797810, at *11 (N.D. Cal. June 28, 2017)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

17
18
19
20
21

22
23
24
25
26

27
28

Defendant Ford contends that Plaintiff's claim is time-barred.  *See* Doc. No. 5-1 at 12–13.  As Plaintiff argues, "[t]here is nothing that suggests a requirement that the purchaser discover and report to the seller a latent defect within that time period."  *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222 (9th Cir. 2015) (quoting *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 295 (Cal. Ct. App 2009).  Plaintiff's contention is partially correct.  *See* Doc. No. 9 at 16.  A latent defect may give rise to a cause of action if it exists during—but is discovered subsequent to—the statutory warranty period.  *See Mexia*, 95 Cal. Rptr. 3d at 295.  However, claims for latent defects must still be brought within four years of discovery.  *See Harris v. LSP Prod. Grp., Inc.*, No. 218CV02973TLNKJN, 2021 WL 2682045, at *6 (E.D. Cal. June 30, 2021) ("[*Daniel* and *Mexia*] held that latent defects may breach the implied warranty even when they are not discovered within the implied warranty's one-year duration under § 1791.1 because § 2725 extends the statute of limitations duration *to four years*") (emphasis added).  Defendant Ford and Plaintiff dispute when this four-year statutory period begins to run, but they do not dispute that it remains applicable.  *See* Doc. No. 5-1 at 13; Doc. No. 9 at 16.

Regardless, Plaintiff does not plead sufficient factual information for the Court to determine whether his claim is time-barred.  As noted above, Plaintiff pleads that the Vehicle was both "new" and "Certified Pre-Owned."  Compl. ¶¶ 6, 7.  Accordingly, the Court **DENIES** Defendant Ford's motion on this basis without prejudice to Defendant Ford reasserting this argument.

However, even assuming his claim is timely, Plaintiff's claim appears to nonetheless fail.  To the extent Plaintiff alleges the vehicle was "new" as defined in Cal. Civ. Code § 1793.22(e)(2), *id.* ¶ 6, that provision limits the definition of a "*new* motor vehicle" to § 1793.2(d), and it is inapplicable to this cause of action, *see* Cal. Civ. Code § 1793.22(e).

Further, Plaintiff also alleges he purchased a "Certified Pre-Owned . . . 2014 Ford Edge."  Compl. ¶ 7–8.  A claim under California Civil Code § 1791.1(a) extends to used

goods, but "[i]t shall be the obligation of the distributor or retail seller making express warranties with respect to used consumer goods (and not the original manufacturer, distributor, or retail seller making express warranties with respect to such goods when new)." Cal. Civ. Code § 1795.5(a); *see also Goldstein v. General Motors LLC*, 445 F. Supp. 3d 1000, 1018 (S.D. Cal. 2020). Defendant Ford correctly contends that Plaintiff's claim fails if the Vehicle was purchased used because this cause of action may only be brought against the distributor or retail seller, not the manufacturer. *See* Doc. No. 5-1 at 11–12.

While Plaintiff alleges Defendant Ford is both the distributor and manufacturer, the Court rejects these conclusory and seemingly inconsistent allegations. *See* Compl. ¶¶ 6–8. "Courts routinely dismiss implied warranty claims for used cars that are directed at the manufacturer." *Goldstein*, 445 F. Supp. 3d at 1018–19. Plaintiff also names co-defendant Norm Reeves Ford Lincoln here—perhaps a plausible retail seller—but it is unclear from the facts presented which defendant is liable under this cause of action and why. *See* Compl. ¶¶ 31–33.

Moreover, as in *Potts*, "the complaint contains form language alleging [*inter alia*] 'the Vehicle . . . does not conform to the promises or affirmations of fact made on the container or label,' even though there is no suggestion the Vehicle was purchased in a labeled container. As discussed in the preceding claims, this fails to meet the pleading standard in federal court." 2021 WL 2014796, at *6 (citing *Iqbal*, 556 U.S. at 678); *see* Compl. ¶ 29 (using the same form language quoted). Therefore, the Court **GRANTS** Defendant Ford's motion to dismiss the fourth cause of action.

5. *Fifth Cause of Action: Violation of B&P Code § 17200*

For the same reasons that Plaintiff's UCL claim against Defendant Ethos fails, his UCL claim against Defendant Ford fails. As discussed above and will be explained below, Plaintiff fails to state a predicate cause of action against Defendant Ford that his unlawful UCL claim can borrow from. Nor does he plausibly plead any fraudulent or unfair conduct. Accordingly, the Court **GRANTS** Defendant Ford's motion to dismiss

Plaintiff's fifth cause of action.  For the sake of completeness, the Court addresses Defendant Ford's remaining contention: that Plaintiff seeks improper relief under this cause of action.  *See* Doc. No. 5-1 at 14–15.

Plaintiff seeks injunctive relief and restitution.  Compl. ¶ 33.  Plaintiff also asserts that he is entitled to "disgorgement of improper fees penalties [*sic*] and interest."  Compl. ¶ 33.  In general, remedies for a violation of the UCL are confined to injunctive relief and restitution.  *See Potts*, 2021 WL 2014796, at *6.  Though "a plaintiff may not recover monetary damages" under the UCL, remedies can include disgorgement if equitable in nature.  *See id.; Cortez v. Purolator Air Filtration Prod. Co.*, 999 P.2d 706, 714–15 (Cal. 2000) (citing Cal. Bus. & Prof. Code § 17203).

However, a party seeking equitable relief must specifically plead the inadequacy of monetary damages in federal court.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Potts v. Ford Motor Co.*, No. 321CV00256BENBGS, 2021 WL 3112471, at *5 (S.D. Cal. July 22, 2021).  Plaintiff fails to do so here.  *See* Compl. ¶ 31–33.

Defendant Ford also contends that Plaintiff lacks standing to pursue injunctive relief.  *See* Doc. No. 5-1 at 15.  "A plaintiff must demonstrate constitutional standing separately for each form of relief requested."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  Injunctive relief is a "prospective" remedy utilized to prevent a legitimate threat of future injury.  *Id.*  Plaintiff has not alleged any threat of future harm.  *See* Compl. ¶ 31–33.

For these reasons, the Court **GRANTS** Defendant Ford's motion to dismiss Plaintiff's fifth cause of action.

### 6.    Sixth Cause of Action: Magnusson-Moss — Violation of 15 U.S.C. § 2301(3)

"To state a claim under the Magnuson Moss Warranty Act ('MMWA'), Plaintiffs must adequately plead a cause of action for breach of a written or implied warranty under state law."  *Zuehlsdorf*, 2019 WL 2098352, at *11 (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)).  For the reasons set forth above, Plaintiff

failed to adequately plead any breach of warranty under California law.  Therefore, the Court **GRANTS** Defendant Ford's motion to dismiss the sixth cause of action.

## C.    Leave to Amend

Federal Rule of Civil Procedure 15(a) states that "leave to amend shall be freely given when justice so requires."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010); *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (noting leave to amend should be granted with "extreme liberality"). A court should grant leave to amend unless the court "determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez*, 203 F.3d at 1127. In determining whether to grant leave to amend, courts generally consider four common factors: (1) undue delay, (2) bad faith or dilatory motive, (3) prejudice to the opposing party, and (4) futility of amendment.  *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, the Court finds no undue delay, bad faith or dilatory motive, prejudice to the opposing party, or futility of amendment.  Therefore, the Court **GRANTS** Plaintiff twenty-one (21) days leave to file an amended complaint.

## IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motions and **DISMISSES** all claims.  Plaintiff must file a First Amended Complaint, if any, on or before **November 18, 2022**.

**IT IS SO ORDERED**.

Dated:  October 24, 2022

HON. MICHAEL M. ANELLO
United States District Judge